Filed 5/21/25  P. v. Ortega CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B333869 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA330272) |
| v. | |
| URIEL ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Uriel Ortega (defendant) appeals the denial of his petition for vacatur of his second degree murder conviction and resentencing pursuant to Penal Code section 1172.6,[1] entered following an evidentiary hearing. He alleges the trial court's determination that he remains guilty of murder under current law is unsupported by substantial evidence, and the trial court may have applied the wrong standard in making its ruling. We find otherwise and affirm.

## BACKGROUND

In 2009, defendant was convicted of the second degree murder of Kareem Wafer in violation of section 187, subdivision (a). The jury found defendant committed the offense for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(l)(C), but found not true the allegations pursuant to sections 12022.53, subdivisions (b), (c) and (d), that defendant personally and intentionally used and discharged a firearm, proximately causing great bodily injury and death. The court sentenced defendant to a term of 15 years to life in prison. The judgment was affirmed on appeal. (*People v. Ortega* (May 25, 2010, No. B216483) [nonpub. opn.].)

**The section 1172.6 petition**

On July 20, 2022, defendant filed a form petition pursuant to former section 1170.95 (since renumbered as section 1172.6). He checked the boxes alleging required conditions for relief and

---

[1] All further unattributed code sections are to the Penal Code unless otherwise stated.

2

requested the appointment of counsel. The court appointed counsel, received the prosecution's opposition, issued an order to show cause and scheduled an evidentiary hearing. The opposition exhibits included portions of the trial transcript, including the jury instructions, the parties' closing arguments, and verdicts.

At the evidentiary hearing on July 21, 2023, the trial court reviewed the parties' briefs and the portions of the 2009 trial record attached to the prosecution's opposition. The court heard the argument of counsel and found defendant ineligible for relief as the jury was given no instructions regarding felony murder, the natural and probable consequences doctrine or imputed malice, but instead instructions regarding direct aiding and abetting murder, as supported by the evidence. The court denied the petition.

Defendant filed a timely notice of appeal from the order.

**Relevant portions of the 2009 trial transcripts**

Kimberly G. testified that on August 5, 2007, she was in the driveway of a parking lot near Hoover Street "hanging out" with Wafer, "Mikey B." and other friends.[2] At some point, Wafer and Michael M. went into a walkway between buildings. Wafer came back about 15 minutes later, followed by two Hispanic men. Kimberly identified defendant both in court and in a photographic lineup as one of the men. He had tattoos on his face, and she had previously "seen him around." The men approached Wafer, defendant yelled, "Westside Hoover," and

---

[2] Mikey B.'s given name is Michael M., and is alternatively referred to by witnesses as "Mikey B.," "Mikey M.," and "Michael M." We refer to him as Michael M.

3

stood in front of Wafer while the other man stood behind, effectively "sandwich[ing] him" from about one foot away.

Kimberly heard gunfire and saw Wafer running toward a liquor store across Hoover Street. She thought both men were shooting because she had seen them both carrying guns. The shooting continued as Wafer ran. Once across the street, Wafer collapsed in the doorway of the store, and Kimberly ran for her life. She testified "[t]*hey* were running after him" but then said she did not think it was both of them. (Italics added.)

Michael M. testified he was a member of Bounty Hunters Blood gang, and he would not have come to court if he had not been subpoenaed. He was in the parking lot with Wafer, his girlfriend Deira J., also known as Raquel G. (Deira) and others at the time of the shooting. Michael M. claimed he refused to speak to responding police officers, denied speaking to Officer Frank Fedynich or saying to him, "That Mexican, he shot my cousin," and "It was that dude with tattoos on his face." When Michael M. was arrested about a month later on an unrelated matter, he volunteered to be interviewed by detectives and Officer Fedynich about the shooting of Wafer. When shown a six-pack photographic lineup he claimed defendant's photo was the only one with black marker on his forehead and the only one in jail clothing; but since he was acquainted with defendant before the shooting, he picked out his photo without telling the officers he recognized defendant. Michael M. claimed Officer Fedynich told him to pick defendant's photo and offered him money, and Michael M. told them defendant was *not* the shooter.

As Michael M. was an uncooperative witness at trial and much of his testimony conflicted with the statements given in his interview with Officer Fedynich, impeachment testimony was

4

offered.  Officer Fedynich testified he had known Michael M. about five years, and until this investigation Michael M. had always been cordial to him, including when they met on the street Michael M. would give him a fist bump and had a nickname for him.

Michael M. was arrested in September 2007 on a narcotics charge and interviewed the next day.  Michael M. was hesitant to talk about the shooting, and going on the record pointing out anybody.  Officer Fedynich denied having offered Michael M. money and testified everyone depicted in the photo array had their forehead blacked out.  When asked whether he recognized the person who shot Wafer in the photo lineup, Michael M. nodded his head at No. 3, the photo of defendant.  Throughout the interview Michael M. maintained, "I'm a gangster" and "I'm not a snitch."  Officer Fedynich testified Michael M. did not say he knew defendant or that defendant was not the shooter.

The testimony of Deira reproduced in the prosecution's exhibit began with her cross-examination and included redirect and recross-examination.   Deira had trouble remembering August 5, 2007, and what she told detectives in her police interview, so a recording of the interview was played in open court.  In her interview, she said she was standing next to her boyfriend Michael M. when she saw three Hispanic men coming through the parking lot.  One had a mustache, and one had tattoos on his forehead.  She then saw people running, including Michael M. and Wafer; as she ran to hide behind a car, she heard gunfire.  Deira claimed she did not see any fight, did not know which of the three men did the shooting, and did not see a gun.

Deira said while Wafer ran, one of the men grabbed him. She thought it was the one with the mustache but was not sure.

She heard five to seven shots. She said Wafer kept running and the shots were fired while the man was holding him. She thought the tattooed man fired the shots but did not see a gun. The man with the mustache then left the parking lot but she did not see the direction he went. She saw the tattooed man on the "other side of the corner" outside the gate and then saw him run down Hoover Street. The third man had already run away in the opposite direction. When the assailants were gone, Michael M. said, "Kare[em] got shot, Kare[em] got shot." She saw Wafer, went to him and called 911.

She identified photo No. 3 from a photographic lineup as the man with the tattoos. She asked not to be called as a witness.

After the recording was played, Deira testified her memory of the events of the shooting was better, and it was when she saw Wafer and others start to run that she hid behind a van. She did not see anyone holding Wafer, and it was once she was behind the van she heard the gunshots. When she was shown a photo array of men with their foreheads blacked out, she told detectives "that guy looks like the guy with the tattoos on his face." But she did not identify defendant as the shooter until she felt pressured to do so.

## DISCUSSION

Defendant first contends the court's finding he was guilty of murder as an aider and abettor was error because the jury found he did not use a firearm and there was no substantial evidence that he was at the scene, pursued the victim or facilitated the shooting.

## I. Applicable legal principles

### A. *Section 1172.6*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), amending sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature also enacted former section 1170.95, now section 1172.6, which provides a procedure to petition for retroactive relief for those who could not now be convicted under sections 188 and 189 as amended. (See *People v. Lewis* (2021) 11 Cal.5th 952, 957.) The procedure provides that a petition may be filed by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a).)

The 2019 amendments to sections 188 and 189 effectively eliminated murder liability under the natural and probable consequences doctrine and changed the requirements for felony-murder liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 849.)[3]

---

[3] Before the natural and probable consequences theory of murder was eliminated (see Stats. 2018, ch. 1015, § 1, subd. (f)), "'"A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."'" [Citation.] A finder of fact relying on the

7

Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  If the court finds the petitioner is entitled to relief, it is required to vacate the murder conviction and resentence defendant on any remaining counts.  (§ 1172.6, subds. (c) & (d); *People v. Lewis, supra*, at p. 960.)

> **B.** *Standard of review*

In conducting an evidentiary hearing under section 1172.6, subdivision (d)(3), the trial court sits as an independent fact finder (*People v. Vargas* (2022) 84 Cal.App.5th  943, 951) and must "'review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard . . .'" (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480, quoting *People v. Clements* (2022) 75 Cal.App.5th 276, 298).

On appeal, we apply the substantial evidence standard of review (see *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233–234), under which "we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence" (*People v. Jones* (1990) 51 Cal.3d 294, 314).  We defer to the trial court's resolution of conflicts and credibility determinations.  (*People v. Clements, supra*, 75

---

natural and probable consequences doctrine is not concerned with whether the aider and abettor actually foresaw the nontarget crime, but rather whether the nontarget crime was reasonably foreseeable when judged objectively."  (*People v. Hin* (2025) 17 Cal.5th 401, 441.)

Cal.App.5th at p. 298.) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

"The standard is deferential, but the evidence in support of the judgment must be *reasonable, credible, and of solid value*; 'a mere possibility' or '[s]peculation is not substantial evidence' [citation]." (*People v. Brooks* (2017) 3 Cal.5th 1, 120.) "[B]ecause 'we *must* begin with the presumption that the evidence . . . *was* sufficient,' it is defendant, as the appellant, who 'bears the burden of convincing us otherwise.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

## II.    Evidence of aiding and abetting

The trial court found the jury instructions given at the 2009 trial "clearly reflect [defendant] was not convicted under a theory of liability pursuant to felony murder, natural and probable consequences . . . nor any theory which imputed malice upon him. Rather, the jury was specifically instructed on murder and direct aiding and abetting." The court noted "a number of witnesses place[d]" defendant at the scene and testified that defendant and another person actively pursued the victim. From this the court inferred that defendant was "aiding and abetting [by] tracking down this individual." The court disregarded

9

testimony that defendant was the shooter,[4] but according to Deira's testimony he actively pursued the victim, which supported an aiding and abetting theory. Defendant contends these findings were unsupported by substantial evidence.

"For a defendant to be liable as a direct aider and abettor, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] . . . [Citations.] An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder.'" (*In re Lopez* (2023) 14 Cal.5th 562, 579.)

Defendant was convicted of second degree murder, which "is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' [Citation.] . . . [Citation.] 'Malice is implied when the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "'In short, implied malice requires a

---

[4]    See *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*), *People v. Arnold* (2023) 93 Cal.App.5th 376 (*Arnold*) and part III of the Discussion.

10

defendant's awareness of engaging in conduct that endangers the life of another . . . .'" (*Ibid*.)

We "begin with the presumption that the evidence . . . *was* sufficient, and the defendant bears the burden of convincing us otherwise." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "[T]he defendant must present his case to us consistently with the substantial evidence standard of review. . . . [Citation.] If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the [ruling] may lie in the evidence he ignores." (*Id*. at p. 1574.) Defendant was required to summarize and discuss all relevant evidence. (See *id*. at p. 1573.) He did not do so. Rather he mostly summarized and quoted in his briefs facts in conflict with evidence that defendant pursued Wafer. However, we defer to the trial court's resolution of conflicts and credibility determinations (*People v. Clements, supra*, 75 Cal.App.5th at p. 298) and accept all reasonable inferences the court could draw from the evidence (*People v. Jones, supra*, 51 Cal.3d at p. 314).

Defendant cites *Cooper, supra*, 77 Cal.App.5th 393 and *Arnold, supra*, 93 Cal.App.5th 376 to argue the trial court could not have relied on testimony from witnesses that defendant was armed, because the jury found untrue the allegation that he used a firearm. (See *Arnold, supra*, at pp. 383–384, citing *Cooper, supra*, at pp. 413, 415.) The trial court did not rely on evidence defendant was armed in its analysis and expressly followed *Cooper*.

Defendant argues he was acquitted of the gun allegations and claims there was *no evidence* he committed an act that

11

facilitated or encouraged the murder, and the prosecution did not prove beyond reasonable doubt he was guilty of murder as an aider and abettor. In particular, defendant asserts the evidence was insubstantial because "*no* witness" testified that defendant *ran* after the victim, there was insufficient evidence he was *tracking* him, and the evidence that defendant *pursued* Wafer was conflicting.

Without mention of gun use testimony implicating defendant, we have found ample evidence to support a finding that "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jones, supra*, 51 Cal.3d at p. 314.) Kimberly testified that when Wafer came out of the walkway between buildings he was followed by two Hispanic men carrying large black guns. Deira saw two or *three* Hispanic men coming through the parking lot, including one with a mustache and one with tattoos on his forehead. Kimberly testified that two of the men carried semiautomatic guns. Two of them "sandwiched" Wafer from only about one foot away from him. One yelled, "Westside Hoover." Kimberly recognized defendant, a man she had seen before, as the one in front of Wafer who yelled, "Westside Hoover." She also identified defendant in court and from a photographic lineup. When Wafer ran across the street, Kimberly heard gunfire and saw at least one of the assailants run after him. Michael M. picked defendant's photo from a photographic lineup, but did not explicitly say he was the shooter.

In sum, as defendant did not carry a gun, it is reasonable to infer there was at least one and possibly a second man *visibly* carrying a gun. Viewed in the light most favorable to the court's determination, and drawing reasonable inferences, it is clear defendant was one of the Hispanic men who emerged from the

12

walkway following Wafer, whether by running after him, tracking him, or pursuing him, while knowing at least one of his companions was armed. Defendant overtook the victim and confronted him, helping to slow his flight or stopping it momentarily, thereby *facilitating* the shooting by one of his cohorts, which proximately caused Wafer's death. The circumstances of armed pursuit show defendant knew what they were doing was dangerous to life and he nevertheless acted deliberately with conscious disregard for life. In short, he facilitated the shooting with implied malice. (*People v. Cravens, supra*, 53 Cal.4th at p. 507.) We conclude substantial evidence supports the trial court's determination the evidence showed defendant was guilty of murder beyond a reasonable doubt.

## III.   The correct legal standard and prejudice

Defendant asks, if we find substantial evidence to consider the trial court failed, that we use the right standard under section 1172.6, subdivision (d)(3), which governs the procedure for the evidentiary hearing held after the issuance of an order to show cause. Defendant argues that instead of acting as an independent fact finder as required at the evidentiary hearing, the court used the factors to determine prima facie eligibility under section 1172.6, subdivision (a). Defendant reasons this is shown by the court's statements, including the following, which defendant quotes with added italics: "[I]t remains that from review of the *overall record of conviction*, this court finds that the *jury instructions given* in the underlying trial clearly reflect the *petitioner was not convicted under a theory of liability pursuant to felony murder, natural and probable consequences . . . nor any theory which imputed malice upon him*. Rather the jury was specifically instructed on murder and direct aiding and abetting."

13

We find it is *defendant* who fails to understand the legal standard applied by the court. The trial court's statement explained why defendant is ineligible for relief under section 1172.6 as a matter of law. Where jury instructions show jurors were not instructed on any theory of liability affected by Senate Bill 1437's changes to sections 188 and 189, or the record of conviction shows the defendant's conviction was based on a theory of liability that remains valid under Senate Bill 1437, a defendant is ineligible for relief as a matter of law. (*People v. Allen* (2023) 97 Cal.App.5th 389, 395.)

As the trial court explained, defendant's jury was not instructed with felony murder, the natural and probable consequences doctrine or any theory that imputed malice to him—the theories of conviction that entitle a person to petition for relief. (See § 1172.6, subd. (a).) The jury was instructed with CALCRIM No. 401, defining aiding and abetting; CALCRIM No. 520, defining express and implied malice; and CALCRIM No. 521, defining first and second degree murder. Defendant was convicted of second degree murder, and after reviewing the trial evidence the trial court found beyond a reasonable doubt defendant was still guilty of murder. "Our Supreme Court has recognized . . . that 'notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*People v. Schell* (2022) 84 Cal.App.5th 437, 442, quoting *People v. Gentile, supra*, 10 Cal.5th at p. 850.) Defendant was thus ineligible for relief as a matter of law.

Ineligibility as a matter of law can be determined at the prima facie stage.  (Cf. *People v. Allen, supra*, 97 Cal.App.5th at pp. 395–396.)  But we reject any suggestion that such a determination is nullified upon the issuance of an order to show cause.  Regardless, ineligibility as a matter of law does establish harmless error.  (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)

We conclude the trial court did not err, and even if so we would find any alleged error harmless.

## DISPOSITION

The order of July 21, 2023, denying defendant's section 1172.6 petition is affirmed.

CHAVEZ, J.

We concur:

ASHMANN-GERST, Acting P. J.

RICHARDSON, J.

15